Jones, J.
(Orally.)
In this case counsel for the probate judge and clerk of courts,respectively,came into court asking, by motion, that each of these county officers be made parties to this suit. At the time of the argument of the case by counsel representing these two officials, we felt disinclined to allow the motion-to be granted, and we have not now changed our opinion. We do not believe that in determining the issues involved in-this case, that the probate j'udge and clerk of court are proper or necessary parties to the determination of this action. A j’udgment rendered in this case does not necessarily bar any right either of the county officials may have. In such special proceeding as quo warranto there is a special statute allowing any person claiming to be entitled to the same franchise or office to be made a party to the proceeding, but. in a case of this kind we do not think either of the officers are entitled to be made parties here, and we deny the motion at this time. The motion is overruled.
In this case the relator, as auditor of the state of Ohio, bas invoked the original jurisdiction of this court in mandamus, under the provisions of sections 166 and 1331 of the Revised Statutes.
Section 166 provides that the auditor of state,“shall,from time to time prepare and transmit to the auditors of the' several counties in the state such forms of returns to be made by them to his office, and such instructions upon any subject affecting the state finances, or the construction of *687 any statute, the execution of which devolves in part upon county auditors and which affects the interests of the state,” and bo on.
Section 1834 provides, that the auditors of the several counties in the state shall make,returns to the county treasurer:
‘‘Each county treasurer, recorder,sheriff, prosecuting attorney, probate judge, commissioner, clerk of the court of common pleas of this state shall make returns, under oath, to' the county auditor of their respective counties, on the first Monday of September of each year, of the amount of fees and moneys received by them, or due them during the year next preceding the time of making such return,”
Under the provisions of the two' sections of the Revised Statutes as they now stand, this proceeding in mandamus was filed. The relator has embodied in the petition a copy of a letter forwarded to the auditor of Pickaway county by the auditor of state, demanding that these two sections of the statute be complied with. The answer of the auditor of Pickaway county has been incorporated, in which he refuses to comply with section 1334 of the Revised Statutes, basing the right of his refusal upon a special local law, which was passed by the General Assembly, April, 1896, and incorporated in 92 O.'-L., 597,
The relator after setting forth the refusal of the county auditor,proceeds in his petition to say that the ground of the refusal to obey the instructions of the relator, are based upon^n act relating to the duties and compensation of county officers in Pickaway county, passed April 22, 1896, and the amendment thereto, and upon no other ground.
The relator says that the act is unconstitutional and wholly void, for the reason that the act contravenes article II, section 26 of the constitution of Ohio, in that the subject matter regulating the fees and salaries of auditors is of a general nature and should have uniform operation throughout the state; and that it is void and of no effect because it contravenes article X, section 5, article XII, section 2 and article XII, section 3, of the constitution of this state.
The relator prays that a writ of mandamus may issue, commanding the defendant, as auditor of Pickaway county, to proceed according to law and collect for his fees, compen *688 sation and salary, those fees prescribed under the general statutes, and prays further, that he cease to draw from the treasury of the county any salary, fees, compensation or perquisites, provided for in the act passed April 22nd, 1896, and amended March 28th, 1898, and to treat these two acts as nullities and observe the forms prescribed by the relator as auditor of state.
To that petition a demurrer has been filed in which is incorporated a waiver of summons in the cause — a waiver of service aud order of allowance of an alternative writ of mandamus, and defendant acknowledges the receipt of a copy of the petition,enters his appearance herein, and files a general demurrer to this petition. The issues are then raised upon the averments in the petition, and the questions submitted to the court are, whether or not the act of 1896, known as the Pickaway county salary law and the amendment thereto, in 1898, are constitutional.
That act provides in substance, that certain county officials of Pickaway county shall receive stated salaries, setting forth the salaries of the several county officers in Pickaway county in section 1. The act comprises thirteen sections, and without at this time calling especial attention to the various sections,I will advert to them as I proceed in the discussion of this case.
It seems that heretofore, in the case reported in 56 Ohio St., 126, the case of Pearson v. Stephens, this same matter came up before the supreme court of Ohio, and it was there decided by a divided court that the act in question was constitutional,
While it has been claimed in the petition in this case that this act contravenes several sections of the constitution of Ohio, it is strenuously urged that it especially contravenes one, viz.: the section which provides that all laws of this character shall be of a general nature and of uniform operation throughout the state.
The case that is reported in the 56 Ohio St., 126 (Pearson v. Stephens), related to an act that was passed the day before the Pickaway county salary law was passed, viz.: the Miami county salary act. Upon an examination of these two laws I will state at the outset, that there is but little practical difference between.the two. The Miami county *689 law is found in the same volume (92 O. L., 567), and was passed April 21st, 1896, and on the day following, the law in question for Pickaway county was enacted. There is but very little difference between the various sections of the Miami county law and the Pickaway county law, so that any decision, we thibk, made by this court, which is adverse to the decision as reported in the 56 Ohio St., will be practically an overruling by this court of the decision of the supreme court.
Counsel for the relator in this case claim that the question of the constitutionality of acts of this kind was seriously doubted by the supreme court of Ohio; that the principle was never argued fully in other cases passed upon before, and that the cases, upon an examination, will show that fact. They claim that the first inception of this doctrine in Ohio jurisprudence, was made in the case of Cricket v. State, (18 Ohio St., 22), the opinion being rendered by Judge White, and whose dictum was adopted and reported in the 21 Ohio St., 1; that the principle involved was not fully discussed or passed upon in those cases; and that, in the decision in the 56 Ohio St., 126, the court conceded that the matter was open to doubt, and finally divided upon the question of the constitutionality of such laws.
Now we have come to the conclusion from the various deeisions in this state, that the principles involved in this case were discussed, adjudicated and passed upon, at least as early as the case reported in the 21 Ohio St.,page 1. That was a case of The State on the relation of Attorney General v. The Judges. And we think the same principles were also passed upon and adjudicated in the cases reported in the 46 Ohio St., 275; 48 Ohio St., 605; and 56 Ohio St., 126.
The main claim of counsel for the relator in this case is, that the act of April 22, 1896, is unconstitutional because it relates to matters wholly of a general nature,and,for that reason should have uniformity of operation all over the state of Ohio. It is said that the duties of the various county officers are of such a character that the citizens of every county of the state have an interest in them; that they have an interest in the character and efficiency of the services of the sheriff of Pickaway county, of the recorder, of the probate judge who issues licenses, and of various other county offi *690 cera, and that, for that reason, the duties of the county officers having a relation to the citizens of the state of Ohio, are of such a character that the laws relating thereto should be of a general nature. I think possibly that point may be conceded. But coming down to the special act in question. This does not in any way relate to the duties of county officials of this state, or, in this case, of the county officials of Pickaway county It relates merely to the compensation those officers shall receive; and as to the question whether or not the compensation is a matter of local interest or general interest, we think that the opinions of the judges in the various cases reported to which I have referred, are convincing,
Now it is also claimed, in addition to this, that the Pick-away county law having provided that after the feet and compensation of the county officials are paid the excess sht 11 go into the county treasury and in that way it becomes a tax, and that taxation can only be levied on the general duplicate.
That question was passed upon in 21 Ohio St., 1. In that case the 5th proposition of the syllabus is as follows:
“The provision of the act that, in case of a surplus accumulating after paying the compensation of the officers and the other expenses of the offices,such surplus may be transferred to the general county fund, does not render the act invalid”.
And in the second; “The object of these acts is not taxation for the purposes of general revenue, but to limit and' provide for the payment of the compensation of the officers named, from the earnings of their respective offices, and to reduce the expense of official service to the public.”
This decision was rendered in 1871, and from that time until the present it has never been questioned, unless it can be said to be called into question by the dissenting opinion of the two judges in the case of Pearson v. Stephens,supra, in the 56 Ohio St., 126.
While the question was not up before the court in the case reported in the 18 Ohio St., 22, and while it may be said that what Judge White said was mere dictum,it will be observed that in the case of the State on the relation of the Attorney General, reported in the 21 Ohio St., 1, the same *691 judge rendered the opinion in the later case, and while it might have been a dictum in the first case, it became law in Ohio when reported in the latter case. The court was composed at that time of Scott, Welch, Day, White and Mc-Ilvaine, Judges of repute and eminence in tne state. I refer to this fact because it is argued that the circuit court of 'this circuit can question the constitutionality of these statutes.
And later, in 1889, when an entirely new court occupied the bench, composed of Owen, Dickman, Minshall, Spear and Williams, they discussed this question in 46 Ohio St., 275, although it involved, in that case, the right to form a special school district. They discussed the main features involved in this case, and they approved the case in the 21 Ohio St., 1, and the case of McGill v. State in the 34 Ohio St., 228; and in that case, referring to the suit against the judges, Judge Spear delivering the opinion said:'
“The purpose of the act was to limit the compensation of the county treasurer, auditor,recorder,sheriff,probate judge and clerk of the county of Hamilton, and to have fixed by the judges of the court of common pleas of that county, the •compensation of all deputies, clerks etc., employed by those ■officers. The matter of fees to be paid county officers had been, long before, made the subject of a general statute which fixed fees for those officers throughout the state, and the subject was clearly a general one,yet this court held that the act in question was not a law of a general nature, but was intended to provide for a condition of things in its nature local to that county.’’
Now, then, why cannot the act be merely local to the county as to the compensation of the county officers? But it has been insisted that it cannot be local for the reason that the citizens of the state have an interest, are each interested that the county officials should be efficient,and receive proper salaries. But it has been held in the case of Pearson v. Stephens, (Judge Bradbury, delivering the opinion), that the conditions are presumed to exist which the law requires. We think the case in the 46 Ohio St., p. 275, pertinent; also the case of McGill v. State, 34 Ohio St., 228, where the court reviewing the act prescribed for selecting juries in Cuyahoga county,said: “It was not doubted that the mat *692 ter of the selection of juries was a general subject in which the people of the state at large were interested, and that, since the organization of the state, it had been provided for the general laws, so that the law which provided a special mode of selecting juries in that county, was one treating of a general subject already embraced in general laws,, making provisions applicable to all counties of the state,yet this court held that the act was not a law of a general nature, requiring uniformity of operation throughout the state, but that it was designed to meet a special want in a particular-county, and was not in conflict with the constitution.”
‘‘It follows that if the act in question in this case can, consistent with the subject matter and the provisions of the act itself, reasonably be regarded as one local in its nature, rather than general, the court’s duty to maintain it is clear. Nay,unless it clearly appears that it is general in its nature, and not local, it must be sustained.”
The supreme court,sitting in the case in the 48 Ohio St., 605, passed upon the validity of an act which provided ‘‘that, in all.cities in this state of the second grade of the first class, each justice of the peace,for services rendered, shall receive-in lieu of all fees,a salary of eighteen hundred dollars &c.”
Now it is urged here by one of counsel for the relator, that since the county officials, including the county auditor of Pickaway county,is a constitutional officer,one made by the constitution,that that reflects upon the question whether or not this law is of a general or special nature with reference to his compensation. But we find that argument disposed of in the case reported in the 48 Ohio St., passing upon an act fixing the compensation of the justices of the peace, an officer created by the constitution of 1851, and this special act fixing the compensation of the justices of the peace, in and for Cuyahoga county,was held to be constitutional, and they cite in that case the dictum in the case of Cricket v. State, supra, which is afterwards made the law in the case of the State against the judges. They cite as follows: ‘‘There is nothing in the constitution prohibiting appropriate local legislation, ” and cite Judge White as saying: ‘‘And for myself I will say,that it seems to me the amount of compensation to be attached to a local officers a question in its nature local, and that a law to regulate such compensation' *693 cannot properly be regarded as a law of a general.nature.”
If these words used in 1871, twenty years prior,by Judge White were mere dictum, there is no question that it is now a stare decisis, for this case has been approved by every court since, where the question has arisen, and no division occurred until 1897.
Now coming to the last case upon this question, reported in the 56 Ohio St., 126, it must be said that the opinion of a majority of that court is sustained by. precedent in favor of the constitutionality of laws of this character; furthermore it applies to the case at bar. V
That was a case brought by a tax payer for an injunction and not to obtain a writ of mandamus. The common pleas judge rendered an opinion deciding that the statute in question was unconstitutional, and it was taken to the circuit court; and that court held the statute unconstitutional, and yet, although the decisions of the two courts below were in favor of the unconstitutionality of this statute, the supreme court of Ohio reversed both of the courts and held that the statute was constitutional.
Judge Bradbury,whom we regard as a very able,and eminent judge, rendered the opinion, and rendered it,too,with an able argument in support of this proposition, and was abundantly supported by legal precedent in this state.
As to whether or not laws of this character should be local or general, Judge Bradbury said: “Good government requires that'any efficient and economical system brought into successful operation should be equally enjoyed by all the inhabitants of the state irrespective of county lines. On the other hand, the taxpayers or inhabitants of one county have no appreciable material interest in the amount of compensation paid to its officers by another county.”
You cannot judge matters in Jackson county by what the taxpayers in Pickaway county may wish to pay its officers. It cannot be inferred at this point, as I said before, that this means bringing to Pickaway county inefficient officers, because it has been decided absolutely that the necessary conditions must exist in the county that brought the law into effect.
Judge Bradbury says: ‘‘On the other hand,the taxpay-. ers or inhabitants of one county have no appreciable mater *694 ial interest in the amount of compensation paid to its officers by another county. No part of the burden rests upon them. Each county payB its own officers, and no othel county is called upon to contribute any thing to that end. The amount of service required varies in the several counties, and chiefly depends upon the conditions existing in the county where rendered. Population doubtless, is an important factor in this connection, but wealth and the occupation of the inhabitants, whether agricultural, manufacturing, mining or commercial,also bear materially upon the question of the extent of the service required. What would be adequate compensation for a particular officer in a small agricultural county, would be a mere pittance to one filling the same office in the counties of Hamilton and Cuyahoga.”
Further upon this subject of a special statute, he says; “That a particular subject of legislation can be as well, or better,regulated by a local statute as by a general one, may bear on the question of power, however, upon the ground that it tends to stamp upon such subject a local character. That is, the circumstance, alone, that a particular subject of legislation is specially adapted to regulation by a local statute is, of itself, entitled to consideration in determining the character of such subject, whether local or general. In the case under consideration,the subject may not be as well or better regulated by a local as by a general statute but is also, as we have seen, one that primarily and immediately concerns the inhabitants or taxpayers of the county to which it relates. Moreover, the law itself should be moulded to suit the conditions found to exist in such county.”
Now, without reference to the other authorities upon thi question of the constitutionality of this statute, and upon the main question whether or not it is of a general nature and should have uniform operation in this state, we unhesitatingly hold with Pearson v. Stephens, supra. But it has been said that there are invalid sections in this special act of 1896; and indeed twentytwo various reasons were alleged, denying the constitutionality of this special act by counsel for the relator, Some of them went merely to the question of irregularities found in the statute; others were urged on the constitutional ground, but following the decision in the Pearson v. Stephens case, if the criminal features added by *695 section 12 are .unconstitutional, that does not of itself effect the scheme of the general act — the scheme of compensation. The scheme of compensation can still stand,even if the criminal features are stricken out.. In o.ther words,it is a perfect scheme and could have been adopted without the criminal feature,
J. M. Sheets, Attorney General, J, P. Bradbury, P. S. Monnett, for Relator.
I. P. Synder, Pros. Atty., for Defendant.
Chas. Gerhardt, for A R. Vancleaf, Probate Judge and Geo. B. Thompson, Clerk of Courts.
So, as to the matter of official bonds. Whether that sec- • tion is retroactive or not, it could be stricken out and still leave the feature of compensation-in tact; and following the manner in which the supreme court of Ohio disposed of them in the Pearson v. Stephens case in deciding these two questions, and applying the same reasons to the other unconstitutional features, this court is not required or called upon to pass upon the unconstitutionality of these other sections until a proper case is presented for consideration by this court. For that reason we think, without going more fully into the case than has been done, that the demurrer to the petition should be sustained.
Note— Char les Gerhardt, for Probate Judge and Clerk of Courts, by leave of court; There is no reason why the auditor of Pickaway county should not comply with sec. 1335 E. S., nor why the county officials named in sec. 1334 E. S., should not comply with its provisions. There is nothing in the special act in question that forbids such compliance. The only difference is that the.auditor and'tbose other officials whose compensation is provided for by said special act cannot report the fees, perquisetes, etc.,
Said special act does not contravene sec. 26, art. II, constitution of Ohio, as being a subject matter of general legislation, and the act being limited in its operation to Pickaway county alone. State ex rel. v. Judges, 21 Ohio St., 1; Cricket v. State, 18 Ohio St., 22; Har v. Murray, 48 Ohio St., 605; Pearson v.Stephens, 56 Ohio St., 126; sec. 1069-1070, R. S.; sec. 1157, R. S.; sec. 1230, R. S.; sec. 1260, R. S.; sec. 546, R. S.
Each of these sections provide a different sobedule of fees for oounties having different populations according to the last federal census. Not only are salaries, but fees are graduated by the number of inhabitants in a particular county. There is not a law providing for the compensation of a single county *696 officer on our statute books and in force today, that operates uniformly in every county. Population is certainly a condition purely local, and any rule based upon population must in effect be local in its nature. Section 1289, R. S.
The amount of salary that may be paid an officer can have nothing to do with the nature of the services required of him. In fact,where no compensation is provided for, the duties imposed upon a particular officer must be performed gratuitously by said officer. Anderson v. Commissioners, 25 Ohio St., 13.
Under our theory and form of government, every citizen can be required to serve the state in a civil as well as military capacity. The services shall however be performed none the less faithfully. In practice,however,our officials are usually handsomely compensated; and a just effort has been made to graduate the amount upon conditions purely local in every instance.
The whole difficulty comes about in not regarding compensation as a subject-matter in itself for legislation, and regarding it as a matter incident, or “as to” a general subject.
(2.) The said special act does not contravene sec. 5,art..X of constitution. If the law is for any reason void, then, no authority exists for warrants for the special compensation-salaries, provided for the officers therein named. But it cannot contravene this section unless void in contravention of some other provision of the constitution.
The law is not void because it contravenes secs. 2 & 3, art. XII of the constitution. State ex rel. v. Judges, 21 Ohio St.,
Fees of county officers are not taxes, and the amount received cannot injure the general taxpayer, who must contribute the major portion of said auditor’s compensation under see. 1069 and 1070, R. S., even though such general taxpayer may not have any need ol said auditor’s services and he cannot complain if under the special aot some portion of this burden is lifted from him by fees from those requiring special services, and which fees are paid into the treasury of the county and help pay said special salary. And so far as those paying the fees,they would be just the same in amount were the officer to get them, as they are under said special act. This special act did not change in any way the amount,any one must pay for the services of an official. The fees, so far as amounts are concerned are just the same, and by no process of reasoning can they bo regarded as a tax on property such as sec. 2 & 3 of art. XII provide for; If a tax, all fee bills are unconstitutional.